UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 1:20-cv-00185-FDW

| | |
|---|---|
| ANTHONY PHILLIPS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANDREW M. SAUL, )<br>Commissioner of Social Security, )<br>)<br>Defendants. )<br>)<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff Anthony Phillips' ("Phillips") Motion for Summary Judgment (Doc. No. 13), filed February 12, 2021, and Defendant Commissioner of Social Security Andrew M. Saul's ("Commissioner") Motion for Summary Judgment (Doc. No. 16), filed May 17, 2021. Phillips, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Phillips' Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

**I. BACKGROUND**

Phillips filed an application for Title II benefits on June 22, 2017. (Doc. No. 12-3, p. 13). Phillips alleges disability beginning June 17, 2015. Id. The SSA denied Phillips' initial application and his petition for reconsideration. Id. Phillips then requested a hearing. Id. After a hearing on

1

June 4, 2019, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (Doc. No. 14, p. 5). The Appeals Council denied Phillips' subsequent request for review. Id.

The ALJ found that Phillips had not engaged in substantial gainful activity since June 17, 2015, and that he met the insured status requirements through December 31, 2020. (Doc No. 12-3, p. 15). The ALJ found Phillips to have the following severe impairments: neurocognitive disorder; post-traumatic stress disorder ("PTSD"); and depression. Id. The ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Doc. No. 12-3, p. 19). The ALJ then found Phillips had the Residual Functional Capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c):

> [E]xcept occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk six out of eight hours, sit six out of eight hours, frequently climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, stop, kneel, crouch, and crawl; mentally limited to occasional interaction with the general public, co-workers, and supervisors; changes in the work setting would need to be infrequent and predictable; no fast paced tasks with strict production quotas; however[,] variable paced tasks with end of day production quotas would be acceptable.

(Doc. No. 12-3, p. 21). The vocational expert ("VE") testified that Phillips could not perform his past relevant work as a machinist. Id. at p. 29. However, the ALJ—taking into consideration Phillips' age, education, work experience, and RFC—concluded there are jobs that exist in significant numbers in the national economy that Phillips can perform. Id. at p. 30. As a result, the ALJ concluded Phillips was not disabled, as defined under the Social Security Act, from June 17, 2015, through the date of the ALJ's decision. Id. at p. 31.

Phillips has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). Phillips argues (A) the ALJ did not explain how the evidence he relied on supported his

2

conclusion on the RFC, and substantial evidence did not support those findings; and (B) the ALJ discounted treating physician Dr. Diez's opinion but did not acknowledge the limitations he found or give reasons supported by substantial evidence for discounting them. (Doc. No. 14, p. 1).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate [he] has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's [RFC] before proceeding to step four, which is 'the most [the claimant] can still do despite [his physical and mental] limitations [that affect his ability to work].'" 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (see also Lewis, 858 F.3d at 861–62). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL

> 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [the claimaint's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets his burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal to this Court, Phillips makes the following assignments of error: (A) the ALJ's decision that Phillips had the RFC to perform medium work is not supported by substantial evidence; and (B) substantial evidence does not support the ALJ's decision to discount Dr. Diez's

5

opinion. (Doc No. 14, p. 1). For the reasons stated below, the Court finds neither of these arguments so compelling as to merit remand.

**A. Phillips' RFC**

Phillips argues the ALJ's RFC determination did not account for all of Phillips' limitations. Id. at 7. Phillips specifically argues: (1) substantial evidence does not support the ALJ's conclusion that Dr. Jones, Dr. Marder, and Dr. Britt's opinions are consistent with the RFC; (2) the ALJ did not explain how Dr. Rhoads' findings support the RFC or how bariatric surgery's psychological demands support the RFC; (3) the ALJ misstated the record regarding Phillips' improvement following outpatient therapy; and (4) substantial evidence does not support each conclusion in the RFC. These arguments are without merit.

Upon review, this Court cannot re-weigh conflicting evidence or make credibility determinations, Hays, 907 F.2d at 1456, and instead only considers whether "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" exists, Johnson, 434 F.3d at 653.

**(1) Drs. Jones, Marder, and Britt**

Phillips argues substantial evidence does not support the ALJ's conclusion that Dr. Jones, Dr. Marder, and Dr. Britt's opinions are consistent with the RFC. The records relied on by the ALJ provide substantial support for the ALJ's determination that Drs. Jones, Marder, and Britt's psychiatric opinions are consistent with the medium RFC. See generally Keffer v. Colvin, 519 F. App'x 151 (4th Cir. 2013) (affirming Commissioner's decision upon review of record showing substantial evidence supported the ALJ's RFC determination).

Here, Dr. Jones noted in September 2016, that Phillips was "doing well overall with a more stable mood," and in October 2016, that Phillips was "continuing to get better" and "working with the insurance company to apply for jobs." (Doc. No. 12-3, 23). In addition, Dr. Britt found in August 2018, that Phillips had "cooperative behavior," and "no suicidal ideation, no worthlessness, no overvalued ideas, no ruminations, no hallucinations, organized and coherent thought process, average intelligence, distractible concentration, concrete abstraction with fair reasoning, impaired memory, appropriate fund of knowledge, mild impairment in insight, and moderate impairment in judgment." Id. at p. 25. Furthermore, Dr. Marder's March 2019 findings of an "essentially normal [] mental status examination except for a mildly tense affect and impaired memory," and an assessment that Phillips is "mostly normal," with "an okay mood with appropriate affect, no suicidal or homicidal thoughts, linear, logical, and goal directed through processes, impaired cognition with regard to memory, fair judgement, and fair insight" are supportive of the RFC. Id. at p. 24. For the above reasons, substantial evidence supports that Drs. Jones, Marder, and Britt's psychiatric opinions are consistent with the RFC.

### (2) Drs. Rhoades and Hazelton

Next, Phillips argues the ALJ did not explain either how Dr. Rhoades' findings or how bariatric surgery's psychological demands support the RFC. (Doc. No. 14, pp. 13-15). First, the ALJ explained in detail how Dr. Rhoades' opinion is consistent with the RFC. The RFC "'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Social Security Ruling 96-8p. Titles II and XVI: Assessing Residual Functional Capacity in Initial

7

Claims, 61 FR 34474-01). With such a narrative discussion the ALJ "must both identify evidence that supports [its] conclusion and 'build an accurate and logical bridge from [that] evidence to [its] conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

The ALJ explained how Dr. Rhoades' findings support the RFC. The ALJ found Dr. Rhoades' June 2016 opinion—that individuals with Philips' attentional abilities and emotional lability would be unsafe in a factory setting or around machine—unpersuasive as it was inconsistent with and unsupported by other evidence in the record. (Doc. 12-3, p. 27). For example, the ALJ explained Phillips' high functioning activities of daily living like driving, cooking, mowing the grass with a riding lawnmower, shopping for clothes, parenting, fishing, going to church, and teaching the third grade class at church, were inconsistent with Dr. Rhoades' opinion. Id. Additionally, the ALJ explained Dr. Rhoades' opinion was unsupported by the medical evidence record consisting of an essentially normal occupational therapy driving session. Id. Finally, the ALJ also explained in detail how Dr. Rhoades' opinion—that Phillips' issues would not prohibit all forms of employment and that Phillips' should consider acquiring a commercial driver's license—is consistent with and supported by the same evidence listed above. Id.

Second, the ALJ sufficiently explained how bariatric surgery's psychological demands are consistent with the RFC. For example, the ALJ noted that in November of 2016, Dr. Hazelton[1] found Phillips to have been stable and improving with each visit from a behavioral and emotional perspective. (Doc. No. 12-3, p. 24). Phillips even admits in his Motion for Summary Judgment "Dr. Hazelton believed that Phillips could handle the physical and psychological demands

---

[1] Dr. Hazelton evaluated Phillips' psychological well-being to determine if Phillips could undergo bariatric surgery, which Dr. Hazelton approved after finding Phillips was stable and had improved. (Doc. No. 14, p. 16).

8

accompanying bariatric surgery." (Doc. No. 14, p. 16). For the above reasons, the Court finds the ALJ explained how bariatric surgery's psychological demands are consistent with the RFC.

### (3) Phillips' Improvement Following Therapy

Phillips also argues the ALJ misstated the record regarding Phillips' improvement following outpatient therapy. However, the Commissioner acknowledges this error in its Motion for Summary Judgment and argues other evidence still showed improvement. The Court finds that the ALJ's error is harmless. In order to successfully argue a harmful error occurred, Plaintiff must show that remand would result in a finding of disability. Dover v. Astrue, No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) ("even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result") The Court finds the ALJ's error harmless because the ALJ points out other substantial evidence to support its conclusion that Phillips was improving. For example, the ALJ noted Drs. Jones, Marder, and Britt each had findings of mental improvements and findings that Phillips was essentially normal. (Doc. 12-3, pp. 23-25).

### (4) Substantial Evidence for Each Conclusion in the RFC

Next, Phillips argues the ALJ failed to provide a narrative discussion to show how substantial evidence supports each conclusion in the RFC. (Doc. No. 14, p. 19). Notably, Phillips makes conclusory statements to set forth the specific argument on this assignment of error. Upon review, the Court finds substantial evidence supports each conclusion in the RFC. For example, the ALJ's finding of Phillips' high functioning activities (i.e., driving, cooking, fishing, going to church, and teaching third grade class) supports the conclusion that Phillips is capable of medium work. Additionally, the ALJ noted consistently throughout the decision the findings of Phillips'

psychiatrists, psychologists, counselors, therapists, and treating physicians alike that illustrated Phillips' improvements were consistent with the RFC. (Doc. 12-3, pp. 21-29). The Commissioner's brief summarizes other substantial evidence to support the RFC, and the Court incorporates that discussion herein. (Doc. No. 17, pp. 6-7). For the above reasons, the Court finds substantial evidence supports each conclusion in the RFC.

### B. The ALJ's Decision to Discount Dr. Diez's Opinion

Finally, Phillips argues the ALJ did not articulate how he concluded Dr. Diez's opinion was unsupported by its findings or inconsistent with other evidence in the record. (Doc. No. 14, p. 21). This argument is without merit.

For claims filed with the SSA after March 27, 2017, the ALJ gives no specific evidentiary weight to any medical opinion. See 20 C.F.R § 404.1520c. The new scheme requires the ALJ to evaluate and articulate the persuasiveness of an opinion. The most important factors considered when determining the degree of persuasiveness are supportability and consistency. Id. at C.F.R § 404.1520c(a). The ALJ can articulate how it considered the medical opinion(s) provided to it in a "single analysis" and is not required to separately articulate how it considered each medical opinion individually. Id. at C.F.R § 404.1520c(b)(1). However, the ALJ is required to explain how it considered the supportability and consistency factors for a medical source's opinion in its decision. Id. at C.F.R § 404.1520c(b)(2).

Here, the ALJ explained why Dr. Diez's opinion was inconsistent with and unsupported by other medical evidence. Dr. Diez opined Phillips could not multi-task, be in crowded/noisy environments, work at heights or on ladders, or work more than part-time. (Tr. 1666). However, the ALJ lists several inconsistencies within Dr. Diez's opinion, including but not limited to: (1)

the "essentially normal to no more than moderate findings" by Drs. Jones and Marder in their mental status examinations; (2) inconsistencies with Phillips' family doctor's, Dr. Lenderman, report of Phillips' improved anxiety, energy, mood, and satisfaction with his own treatment for depression and anxiety; (3) his neuropsychologist's release of Phillips from care on June 20, 2016 due to his "significant improvement with excellent attention and concentration"; and (4) the high functioning activities of Phillips' daily living, such as driving, cooking, teaching a class at church, etc. (Doc. No. 12-3, 28). In addition, the ALJ points out Dr. Diez's opinion is unsupported by his Dr. Diez's own "essentially normal" examination on August 15, 2018 that indicated Phillips was doing better. Id. Finally, the ALJ explains Dr. Diez's other opinion—that Phillips remains totally disabled from gainful employment—contradicts findings by Phillips' treating counselors, therapists, and treating providers. Id. For the above stated reasons, the ALJ's decision to discount Dr. Diez's opinion is supported by substantial evidence.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED; the Commissioner's Motion for Summary Judgment (Doc. No. 16) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: July 12, 2021

Frank D. Whitney
United States District Judge